In the Matter of the CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., Petitioner, v. ROBERT D. HELSBY et al., Constituting the Public Employment Relations Board, Respondents.

Third Department, March 11, 1970.

*DeGraff, Foy, Conway & Holt-Harris (John T. DeGraff, Samuel Jacobs* and *Frederick C. Riester* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General (Ruth Kessler Toch* and *John Q. Driscoll* of counsel), for respondents.

HERLIHY, P. J.   The respondent Public Employment Relations Board (PERB) has found that the Civil Service Employees Association (CSEA) violated subdivision 1 of section 210 of the Civil Service Law and has imposed a suspension of dues deduction privileges on CSEA for a period of six months.

Before proceeding to the merits it would be helpful to set forth the pertinent facts forming the prologue of the present controversy.

On April 21, 1967 the Governor approved a new article 14 of the Civil Service Law entitled "Public Employees' Fair Employment Act". (See Civil Service Law, § 200 *et seq.*) The article became effective September 1, 1967. Prior to the effective date the respondent PERB was duly organized and the petitioner CSEA reformed itself from a membership organization into a union type of organization. On November 15, 1967 Governor Rockefeller recognized CSEA as the representative of the "general unit", of which some of the allegedly striking employees in the present case were members. On November 30, 1967 PERB issued an order which disrupted negotiations between the Governor and CSEA. On December 4, CSEA instituted an article 78 proceeding which on February 14, 1968 resulted in an annulment of the order by this court (29 A D 2d 196).

PERB took an appeal to the Court of Appeals and while the case was pending therein and on March 1, 1968 the Division of Classification handed down a decision on the appeal of some 30,000 clerical and stenographic employees for a reallocation to higher salary grades and granted only about one half of the appeals and then only to an amount of an increase of about $200 per annum in the lower grades. This decision by the Division of Classification became known generally to the subject employees in the State hospitals about March 5, 1968. The demonstration in question was a direct result of dissatisfaction with the decision of the Division of Classification.

It should also be noted that disciplinary proceedings were instituted against the alleged "strikers" and following a hear-

ing the charges were dismissed from which there was no appeal taken. Further, proceedings were not instituted against a local council of CSEA at the hospitals involved or against any other organization albeit the alleged "strikers" were members of CSEA, other unions and non-affiliates.

Article 14 of the Civil Service Law captioned "Public Employees' Fair Employment Act" [commonly referred to as the Taylor Law] was enacted by the Legislature in 1967. The "Statement of policy" was to the effect that "The legislature of the state of New York declares that it is the public policy of the state and the purpose of this act to promote harmonious and cooperative relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government." (See *Matter of Civil Serv. Employees Assn.* v. *Helsby*, 31 A D 2d 325, 330, affd. 24 N Y 2d 993.)

We now reach the merits of this controversy.

On the afternoon of March 5, 1968 and on the subsequent days of March 6 and 7, some 129 clerks, stenographers and telephone operators out of a total of 252 such employees employed at the Bronx, Brooklyn and Manhattan State Hospitals, absented themselves from work. Most of these employees took such time off because of their desire to express dissatisfaction with a decision by the Division of Classification in the State Civil Service Commission of an appeal for reallocation of clerical and stenographic employees to higher salary grades. The absenteeism occurred after meetings of the affected employees at each hospital, and on March 6 some of the employees staged a demonstration at the Governor's New York City office.

Many of the employees obtained permission to be absent from work prior to leaving and it is not disputed that following the absences nearly all of the employees involved were permitted by their supervisors and the Department of Mental Hygiene to charge the absences as "pass-day, vacation day, sick leave, personal leave or leave without pay" and that with such excused leave, nearly all of the employees received full compensation for the period of absence. Some two months after the otherwise excused absences, the Department of Mental Hygiene decided that it had in fact been a strike and then docked the employees' pay and directed that disciplinary proceedings be instituted against the individual employees. The hearing officer in the disciplinary proceedings has determined that the absences were not unauthorized or otherwise contrary to the "Public Employees' Fair Employment Act".

In the interim on April 27, 1968, the legal counsel to PERB filed charges against CSEA, alleging in the first paragraph thereof that CSEA had violated subdivision 1 of section 210 of the Civil Service Law in that "it caused, instigated, encouraged, condoned and engaged in strikes" by certain employees in the named hospitals in the City of New York. In a separate paragraph numbered "2", the acts or activities of CSEA relied upon to show wrongdoing were specified:

"(a) conducting the meetings at which strikes were discussed and strike votes were taken;

"(b) providing transportation to the strikers at Brooklyn State Hospital for the purposes of the strike;

"(c) informing the public employees who went out on strike, prior to their going out on strike and during the strike that the Civil Service Employees Association would provide them with counsel in any disciplinary proceedings brought as a result of the strike;

"(d) informing the public employees who went out on strike, prior to their going out on strike and during the strike, that there was a legal, moral and financial obligation on the part of CSEA to support the strikers in any disciplinary proceedings brought as a result of the strike;

"(e) engaging in publication of inflammatory statements and advertisements; and

"(f) making little or no proper effort to terminate the strike."

There were no further or separate specifications served upon CSEA although apparently a demand for a bill of particulars was served upon PERB.

Section 210 of the Civil Service Law is entitled "Prohibition of strikes" and subdivision 1 thereof provides as follows: "No public employee or employee organization shall engage in a strike, and no public employee or employee organization shall cause, instigate, encourage or condone a strike."

Subdivision 4 of section 210 of the Civil Service Law provides that the instant order of PERB is reviewable pursuant to article 78 (CPLR) and in the absence of any limiting legislation, the rule of substantial evidence as applied in administrative proceedings is applicable hereto. The specifications state definitely a *strike* and unless upon the present record it can be found that there was a strike by the employees as charged, there can be no penalty imposed in this proceeding because of the familiar rule that the scope of a punishment or penalty proceeding before an administrative board is limited to the

charges and specifications as served upon the alleged wrongdoer prior to a hearing.

The hearing officer in this case found that the evidence was insufficient to establish that CSEA either caused or instigated the strike, however, PERB reversed this finding and found that there was sufficient participation by the officials of CSEA to hold that CSEA did instigate or encourage the employees' actions. The activities relied upon by PERB were not conducted or condoned by the officials of CSEA at a State level. Beyond doubt the local chapter officials of CSEA did participate in the employee meetings and did convey to the employees the fact that *CSEA members* are entitled to legal representation from CSEA in *any* disciplinary proceeding. Upon the record in its entirety, there are no inferences available that responsible officials of CSEA at the State or local level actually participated by way of instigation in the absenteeism. Such activity as might be termed encouragement is remote from the absenteeism and cannot be considered as being a *precipitating* factor in the absenteeism.

In our opinion, the record does not contain substantial evidence to support the finding that CSEA as an employee organization was at fault, either in the initiation or condoning of the absenteeism or as to the duration thereof.

Furthermore, the disciplinary proceedings against the individual employees were determined in their favor. In view of such determination, the finding that CSEA instigated or encouraged a *strike* would be a *non sequitur*. Employee organizations must be responsible for their activities, but to impose sanctions where the actual activity engaged in by the employees has been determined in their favor would be an inequitable result.

It also appears that as of the time of the subject employees' absenteeism from work, PERB had effectually precluded CSEA from acting as the representative of these employees in negotiating with the State. At the time in question CSEA was not in a position to act as a union under the Taylor Law to secure employment benefits to its members. The limbo in which CSEA was cast was not removed until the March 7, 1968 decision of the Court of Appeals (21 N Y 2d 541) affirming this court. CSEA not being at the time in question a duly recognized employee organization in the eyes of PERB, it is difficult to perceive the basis by which PERB can consider it to have been the recognized employee organization of the subject employees (not all of which belonged to CSEA) within the meaning of subdivision 1 of section 210 of the Civil Service Law for pur-

344

poses of instigating or encouraging a strike. We do not, however, pass upon this particular preliminary question.

In addition to the other perplexing features of this administrative proceeding, it is established that not all of the employees were members of CSEA, but that in fact some were members of a competing union and some were not members of any union.

It should be noted that, under different circumstances, absenteeism, as such, might constitute the basis for a finding of " strike " under the statute.

In considering the background of this case and the newness of the statutes involved at the time the subject employees engaged in absenteeism, it would appear that the penalty of forfeiture of dues deduction privileges imposed by PERB was excessive. However, we need not reach the merits of this particular part of the proceeding.

The determination should be annulled, without costs.

REYNOLDS, STALEY, JR., GREENBLOTT and COOKE, JJ., concur.

Determination annulled, without costs.